UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK ALAN ZARKOWSKI,

Plaintiff,

v.

COUNTY OF KERN, *et al.*,

Defendants.

Case No. 1:25-cv-00063-KES-CDB

ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

(Doc. 40)

ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

(Doc. 35)

Clerk of the Court to Docket Second Amended Complaint and Issue Summonses

**14-Day Deadline**

**Background**

Plaintiff Mark Alan Zarkowski proceeds pro se and *in forma pauperis* with a first amended complaint (Doc. 5) alleging causes of action against Defendant deputies Juan Carlos Cazares and Sean P. Dunshee for unlawful search and seizure of Plaintiff in violation of his rights under the Fourth Amendment to the U.S. Constitution. *See* (Docs. 6, 10) (findings and recommendations and order dismissing certain of Plaintiff's other claims and a defendant). Following a scheduling conference with the parties, the Court entered the operative scheduling order setting all case management dates, including discovery and pretrial motion filing deadlines. (Doc. 25). Relevant here, the parties' deadline to file any amended pleading was July 2, 2026,

and the deadline to complete non-expert discovery is September 18, 2026. *Id.*

Pending before the Court is Plaintiff's motion to modify the scheduling order to the extent of continuing the deadline to seek leave to amend his complaint, filed June 22, 2026. (Doc. 35). Defendants opposed Plaintiff's motion (Doc. 35) and Plaintiff filed two related notices and a reply (Docs. 38, 39, 41). However, following his filing of the motion, Plaintiff timely filed a motion for leave to file a proposed second amended complaint on the operative deadline to amend pleadings (July 2, 2026). (Doc. 40). Accordingly, Plaintiff's motion to modify the scheduling order will be denied as moot.

As for Plaintiff's motion for leave to file a second amended complaint, Defendants did not file any opposition. Although counsel for Defendants has represented that Defendants may move to dismiss the proposed second amended complaint should the Court grant Plaintiff's motion (*see* Doc. 42 at 3), the Court construes Defendants' failure to file an opposition to Plaintiff's motion as a non-opposition. *See* E.D. Cal. Local Rule 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.").

**<u>Governing Legal Standard</u>**

Where a plaintiff has once amended his complaint as a matter of right, further amendment requires leave of the court or written consent of the adverse parties. Fed. R. Civ. P. 15(a)(1) & (2). "Rule 15(a) is very liberal" and a court should freely give leave to amend when "justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).

Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *see Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

A court ordinarily considers five factors in deciding whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The factors are not weighed equally. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see Atkins v. Astrue*, No. C 10–0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011) (the five factors "need not all be considered in each case"). Futility of amendment and prejudice to the opposing party can, by themselves, justify the denial of a motion for leave to amend. *Bonin*, 59 F.3d at 845; *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the consideration of prejudice to the opposing party carries the greatest weight).

In conducting this five-factor analysis, the court generally grants all inferences in favor of permitting amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Moreover, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

**Discussion**

In his proposed second amended complaint, Plaintiff seeks to add an individual defendant (Seargeant Malloy) and a municipal entity (the County of Kern) and assert claims against them arising under 42 U.S.C. § 1983. *See generally* (Doc. 40). He also seeks to add additional claims against current Defendants Cazares and Dunshee. *Id.* Although the Court previously dismissed County of Kern from this action after Plaintiff failed to allege a cognizable municipal liability claim in his first amended complaint (Docs. 6, 10), Plaintiff asserts that information learned during discovery remedies deficiencies noted by the Court in his pleadings. *Id.* at 4-5.

The Court has considered the *Nunes* factors discussed above and finds, particularly given Defendants' non-opposition to the grant of Plaintiff's motion and failure to argue that the proposed amendments are futile or that amendment would result in prejudice to Defendants, that the *Nunes* factors either are neutral or largely weigh in favor of permitting Plaintiff to file the proposed second amended complaint.

Service of the second amended complaint will be deemed effective on all Defendants,

including newly added Defendants County of Kern and Sergeant Malloy given that counsel from the Kern County Counsel's office presently represents the appearing Defendants, upon the docketing by the Clerk of the Court of the second amended complaint and issuance of summonses.

**Conclusion and Order**

For the reasons stated above, it is HEREBY ORDERED that Plaintiff's motion to file the proposed second amended complaint (Doc. 40) is GRANTED.

The Clerk of the Court is DIRECTED to docket Plaintiff's proposed second amended complaint (attached to this order as "Exhibit A") and to issue summonses for the newly added defendants (County of Kern and Sergeant Malloy).

It is FURTHER ORDERED that all Defendants shall file their responsive pleading to Plaintiff's second amended complaint within 14 days of the issuance of summonses for the newly added defendants.

And it is FURTHER ORDERED that Plaintiff's motion to modify the scheduling order (Doc. 35) is DENIED as moot.

IT IS SO ORDERED.

Dated: **September 8, 2026**

UNITED STATES MAGISTRATE JUDGE

# Exhibit A

Mark Alan Zarkowski
2442 Burlingham Place
Simi Valley, CA 93063
Plaintiff *Pro Se*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| **MARK ALAN ZARKOWSKI,**<br><br>Plaintiff,<br>vs.<br><br>**COUNTY OF KERN**, a public entity; **JUAN CARLOS CAZARES** (Badge #1526), individually; **SEAN P. DUNSHEE** (Badge # Unknown), individually; **SERGEANT MALLOY**, individually; and **DOES 1–100**, jointly and severally,<br><br>Defendants. | 1:25-cv-00063-KES-CDB<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

1. 42 U.S.C. § 1983 – Fourth Amendment (Unlawful Entry, Seizure, Excessive Force, Failure to Intervene)
2. 42 U.S.C. § 1983 – First Amendment (Retaliation)
3. 42 U.S.C. § 1983 – Fourteenth Amendment (Substantive & Procedural Due Process)
4. 42 U.S.C. § 1983 – Municipal Liability (Monell)
5. 42 U.S.C. § 1983 – Supervisory Liability & Conspiracy

Plaintiff, Mark Alan Zarkowski, representing himself pro se, for his Second Amended Complaint against Defendants, alleges as follows:

## I. INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiff's fundamental rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. This action arises from the events of January 15, 2023, during which Defendant

deputies of the Kern County Sheriff's Office unlawfully breached the threshold of Plaintiff's private residence without a warrant, physically seized him for lawfully attempting to perform life-saving CPR on his mother, and subjected him to a punitive detention. Plaintiff further brings this action to challenge the systemic unconstitutional customs, practices, and failures to train by the County of Kern that functioned as the moving force behind these deprivations, including unconstitutional policies enforced by the Coroner's Office regarding the disposition of human remains.

**II. JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (Civil Rights), as Plaintiff asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

3. Venue is proper in the United States District Court for the Eastern District of California, Fresno Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants reside in or are entities situated within this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in Kern County, California, which falls within the geographical boundaries of the Fresno Division.

**III. PARTIES**

4. Plaintiff **MARK ALAN ZARKOWSKI** is, and at all times relevant herein was, a resident of California, and is representing himself pro se in this matter.

5. Defendant **COUNTY OF KERN** is a municipal entity and political subdivision of the State of California. The County of Kern funds, operates, and commands the Kern County Sheriff's Office

and the Coroner's Office, and is liable for the systemic unconstitutional policies, customs, and practices detailed herein under Monell v. Department of Social Services, 436 U.S. 658 (1978).

6. Defendant **JUAN CARLOS CAZARES** is, and at all times relevant herein was, a sworn law enforcement officer employed by the Kern County Sheriff's Office. He is sued in his Individual Capacity.

7. Defendant **SEAN P. DUNSHEE** is, and at all times relevant herein was, a sworn law enforcement officer employed by the Kern County Sheriff's Office. He is sued in his Individual Capacity.

8. Defendant **SERGEANT MALLOY** is, and at all times relevant herein was, a sworn law enforcement supervisor employed by the Kern County Sheriff's Office. He is sued in his Individual Capacity.

9. Defendants **DOES 1 through 100**, inclusive, are unknown to Plaintiff at this time. Plaintiff will seek leave to amend this Complaint to state their true names and capacities once they have been ascertained through discovery. Plaintiff alleges that each fictitiously named Defendant is responsible in some manner for the occurrences and injuries alleged herein, and Plaintiff sues all Defendants jointly and severally.

**IV. GENERAL ALLEGATIONS**

10. At all relevant times, Plaintiff was conducting himself lawfully and obeying all laws.

11. All Defendants involved in subjecting a citizen to liberty deprivations and/or entering a home have an ongoing duty to make appropriate inquiries regarding the facts and circumstances purportedly forming the basis for their conduct.

12. Before subjecting a citizen to substantial liberty deprivations, including, but not limited to, seizing the subject, issuing orders, and detaining and/or placing them under arrest – a reasonable officer knows or should know that they must have a lawful, reasonable, specific, and articulable basis to effectuate such a detention, and must have a lawful basis or lawful bases to subject the citizen or citizens to these liberty deprivations. A reasonable officer also knows that they must have a lawful basis before entering a person's home.

13. The supervisors of Defendants CAZARES and DUNSHEE, specifically Sgt. Malloy and other to-be-identified DOE Defendants of the KCSO knew – or had reason to know – that unleashing deputies with the power to subject citizens to seizures, without properly training and/or without supervising them, and/or without testing/re-testing them on an ongoing basis, and/or without disciplining officers when unlawful seizures occurred (to create a deterrent effect), and/or without enforcing department policies would be reasonably likely to subject citizens to unconstitutional deprivations.

14. On information and belief, Defendants failed to follow KCSO training, policies, and procedures for seizing citizens, and entering a home – which does not permit the abuse of the deputies' authority to seize citizens; or, in the alternative, the Defendants followed unconstitutional KCSO training, policies, procedures, or customs.

15. Furthermore, prior to Defendants CAZARES and DUNSHEE unlawfully breaching the threshold of the residence, they possessed explicit knowledge that no exception to the warrant requirement existed. Dispatch logs demonstrate that the time of death was called at 10:40 a.m., yet Defendants did not arrive on the scene until 11:11 a.m., establishing a 31-minute gap. Upon arrival, the ranking Kern County Fire Department (KCFD) Fire Captain explicitly informed Defendants that it was a "super calm scene," stated "we really want to keep the calm," and expressly warned Defendants that entering the home to confront Plaintiff could "escalate" the situation.

16. Despite actual knowledge of the situation, Defendant SGT. MALLOY exhibited reckless and deliberate indifference to Plaintiff's constitutional rights. Defendant SGT. MALLOY completely abdicated his supervisory duties by failing to inquire into the deputies' legal justification for their warrantless presence in the home, failing to demand articulation of probable cause for an arrest, and failing to order the deputies to stand down when no valid crime could be articulated.

17. By failing to intervene or conduct a mandatory supervisory assessment, Defendant SGT. MALLOY tacitly authorized, facilitated, and approved the deputies' subsequent unlawful actions.

18. Defendant SGT. MALLOY's deliberate indifference and tacit direction and/or authorization were a direct and proximate cause of the deprivation of Plaintiff's Fourth Amendment rights, resulting in Plaintiffs unlawful seizure and arrest.

19. Defendants subjected Plaintiff to a punitive detention by caging him in the back of a marked patrol vehicle for approximately one hour. When Plaintiff requested to be released to hold his mother one last time before her body was removed by the Coroner, Deputy DUNSHEE denied the request, explicitly stating he was doing so "because of [his] prior actions and behavior". When Plaintiff appealed to Deputy CAZARES, CAZARES deferred to Deputy DUNSHEE, noting that Plaintiff "gave [the deputies] a hard time". By mutually enforcing this denial based on Plaintiffs prior verbal behavior, Defendants confirmed the detention was inflicted as extrajudicial punishment.

20. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, and/or wanton and/or willful, and/or conscience-shocking, and/or reckless, and/or malicious, and/or deliberately indifferent to Plaintiffs rights, and/or done with actual malice, and/or grossly negligent, and/or objectively unreasonable.

## V. CAUSES OF ACTION

In a Complaint, a Plaintiff is only required to plead facts, not legal theories. See Johnson v. City of Shelby, 574 U.S. 10 (2014) (Per Curiam) (reversing Fifth Circuit and holding that only facts need to be pled in a complaint, not legal theories). Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 569-70 (2007); Ashcroft v. Iqbal, 556 U. S. 662 (2009). Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1).

**FIRST CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourth Amendment Violation: Unlawful Entry and Supervisory Liability)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

21. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

22. By the willful and joint actions and omissions described above, Defendants CAZARES and DUNSHEE illegally entered the residence without a warrant and absent any valid warrant exception, despite the explicit warnings from the ranking KCFD Fire Captain that the scene was "super calm" and that entry could escalate the situation. By these actions, Defendants CAZARES and DUNSHEE deprived Plaintiff of the right to be free from unreasonable searches and seizures, as secured by the Fourth Amendment to the U.S. Constitution.

23. Defendant SGT. MALLOY is individually liable under the doctrine of Supervisory Liability.

Acting in his supervisory capacity, SGT. MALLOY was notified via telephone that Defendants CAZARES and DUNSHEE were actively deployed inside the residence. Defendant SGT. MALLOY had a constitutional duty to inquire as to the deputies' legal authority for the warrantless entry. By deliberately failing to ask if the deputies possessed a warrant, by failing to verify the existence of a valid exception, and by failing to order his subordinates to vacate the premises, Defendant SGT. MALLOY demonstrated a deliberate indifference to Plaintiff's Fourth Amendment rights and failed to intervene in an ongoing constitutional violation.

24. Plaintiff sustained injuries and damages as set forth above, as a direct and proximate result of Defendants' actions and/or omissions. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

25. Defendants subjected Plaintiff to their wrongful conduct, and deprived Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions. Thus, the conduct of the individual Defendants and DOES 1-50 entitled Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983.

26. Plaintiff is also entitled to reasonable costs and attorney fees under 42 U.S.C. § 1988 and other applicable codes or laws.

**SECOND CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourth Amendment Violation: Unlawful Seizure and Arrest, and Supervisory Liability)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

27. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth

herein.

28. By the willful and joint actions and omissions described above, Defendants CAZARES and DUNSHEE seized, handcuffed, arrested, and caged Plaintiff without a warrant and without probable cause that a crime had been committed. Plaintiff's attempt to revive his mother by performing CPR did not constitute "willful" interference, resistance, or delay under California Penal Code § 148(a)(1); rather, it was a medical necessity and/or an expression of profound grief. By these actions, Defendants CAZARES and DUNSHEE deprived Plaintiff of the right to be free from unreasonable searches and seizures, as secured by the Fourth Amendment to the U.S. Constitution.

29. The arrest was driven by personal ego and/or other unlawful, subjective motivations, rather than law enforcement necessity. While initiating the physical seizure, Deputy DUNSHEE stated to Plaintiff: "I don't go back on my word, it's done, it's over". This statement confirms the arrest was effectuated to fulfill an unlawful motive, rather than upon the objective elements of a criminal statute.

30. Defendant SGT. MALLOY is individually liable for this unconstitutional seizure under the doctrine of Supervisory Liability. Defendant SGT. MALLOY either (1) explicitly directed and ordered his subordinates to arrest Plaintiff without probable cause during the "10-21" telephone briefing, or (2) was fully briefed on the deputies' intent to arrest Plaintiff without probable cause and affirmatively ratified, approved, and authorized the unconstitutional seizure.

31. Plaintiff sustained injuries and damages as set forth above, as a direct and proximate result of Defendants' actions and/or omissions. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

32. Defendants subjected Plaintiff to their wrongful conduct, and deprived Plaintiff of the rights

described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions. Thus, the conduct of the individual Defendants and DOES 1-50 entitled Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983.

33. Plaintiff is also entitled to reasonable costs and attorney fees under 42 U.S.C. § 1988 and other applicable codes or laws.

**THIRD CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourth Amendment Violation: Unlawful Search of Person and Seizure of Property)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, and DOES 1-50**

34. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

35. Defendants violated 42 U.S.C. § 1983 by physically searching Plaintiff's pockets without a warrant, without consent, and absent any valid exception to the warrant requirement, thereby infringing upon Plaintiff's reasonable expectation of privacy.

36. During this unlawful search, Defendants further violated the Fourth Amendment by unlawfully seizing Plaintiff's personal property, specifically a stack of personal cards including his California Driver's License. Defendants removed these items from Plaintiff's possession and retained his identification without lawful justification, thereby meaningfully interfering with Plaintiff's possessory interests in his personal effects.

37. Because the underlying detention and arrest were unlawful, neither the search of Plaintiff's pockets nor the seizure of his property can be legally justified as a valid search incident to arrest,

thereby depriving Plaintiff of his clearly established Fourth Amendment rights.

**FOURTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourth Amendment Violation: Excessive Force)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, and DOES 1-50**

38. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

39. Defendants CAZARES, DUNSHEE, and DOES 1–50 violated 42 U.S.C. § 1983 by using physical force against Plaintiff that was objectively unreasonable under the circumstances, thereby depriving Plaintiff of his clearly established Fourth Amendment right to be free from excessive force.

40. The force used by Defendants—which included initiating a physical seizure by grabbing Plaintiff's arms, applying multiple sets of linked handcuffs, and physically escorting and caging him in a patrol vehicle—was wholly disproportionate and unjustified. Applying the objective reasonableness standard, Plaintiff was unarmed, posed no physical threat to the deputies or the public, was not a flight risk, and was merely engaged in the non-violent act of attempting to revive his mother via CPR.

41. The unreasonableness of the force was exacerbated by Plaintiff's severe physical vulnerabilities. Plaintiff suffers from shoulder mobility issues, osteoarthritis in his hip, and requires medical support devices such as a cane, crutches, or 'walker' to walk. Plaintiff explicitly informed Defendants of his physical limitations, specifically that he had a bad hip and could not walk. Despite this, Defendants subjected him to physical manipulation, requiring three sets of handcuffs linked together to span the distance behind his back due to his shoulder limitations, and forced him to ambulate without his mobility aids. Furthermore, Defendants initiated this

physical seizure prior to any alleged tensing of Plaintiff's arm; therefore, any reflexive physical tensing by Plaintiff was a direct result of Defendants' unlawful initiation of force and cannot serve as retroactive justification for the seizure.

42. Because the underlying seizure and arrest of Plaintiff were completely devoid of probable cause and strictly unlawful, any use of physical force to effectuate that unlawful arrest, including the application of handcuffs, was inherently unreasonable and constituted excessive force under the Fourth Amendment.

**FIFTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – First Amendment Violation: Retaliation)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

43. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

44. Plaintiff engaged in constitutionally protected speech and conduct under the First Amendment when he verbally challenged the deputies' directives, debated the legal basis of their orders, questioned their authority to interfere with a medical act, and verbally expressed his intent to continue performing CPR on his mother.

45. In direct retaliation for Plaintiff's protected speech and non-violent verbal defiance, Defendants CAZARES and DUNSHEE took adverse action against Plaintiff by physically seizing him, placing him in handcuffs, caging him in a patrol vehicle, and arresting him under Penal Code § 148(a)(1). Defendant SGT. MALLOY further retaliated by directing, ratifying, and/or authorizing this adverse action during a telephone briefing.

46. This adverse action would chill a person of ordinary firmness from continuing to engage in protected First Amendment speech. Furthermore, Plaintiff's protected speech was a substantial and motivating factor for the arrest. Because Defendants lacked valid probable cause to arrest Plaintiff for any actual crime, the arrest was pretextual and executed strictly to punish Plaintiff for his constitutionally protected verbal protests and refusal to blindly submit to unlawful orders.

**SIXTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Failure to Intervene)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

47. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

48. Law enforcement officers have an affirmative constitutional duty to intervene when they witness a fellow officer violating an individual's constitutional rights, provided they have a realistic opportunity to prevent the harm.

49. During the events of January 15, 2023, Defendants CAZARES and DUNSHEE were in close physical proximity to one another at all material times. Defendant CAZARES had a realistic opportunity to intervene and stop Defendant DUNSHEE from committing the unlawful entry, unlawful arrest, unlawful search, unlawful seizure, and application of excessive force, but failed to do so. Conversely, Defendant DUNSHEE had a realistic opportunity to intervene and stop Defendant CAZARES from participating in the same constitutional violations, but failed to do so.

50. Furthermore, Defendant SGT. MALLOY, upon being contacted via telephone and briefed on the ongoing situation, had a realistic opportunity and a supervisory mandate to intervene. By

failing to order his subordinates to vacate the home and/or cease the unlawful arrest, Defendant SGT. MALLOY failed to intervene in a clear and ongoing deprivation of Plaintiff's civil rights.

**SEVENTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

51. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

52. Defendants CAZARES, DUNSHEE, and SGT. MALLOY reached a mutual understanding and a "meeting of the minds" to violate Plaintiff's constitutional rights.

53. This conspiracy was facilitated through calculated evidentiary spoliation. Defendants CAZARES and DUNSHEE systematically muted and/or deactivated their Body-Worn Cameras (BWCs) during conversations with each other, Defendant SGT. MALLOY, the Fire Captain, and others to conceal information. Deputy DUNSHEE purposefully moved communications off the recorded dispatch radio channel to confer with SGT. MALLOY privately, intentionally deactivating his BWC to conceal the nature of their agreement and avoid creating an evidentiary record of their collusion.

54. In furtherance of this conspiracy, Defendants committed multiple overt acts, including but not limited to: entering Plaintiff's home without a warrant, arresting Plaintiff without probable cause, executing an unlawful search, and subjecting Plaintiff to punitive detention in a patrol vehicle for approximately one hour while intentionally denying him a final opportunity to view his mother's remains.

**EIGHTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process: Interference with Familial Association)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

55. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

56. The Fourteenth Amendment's Substantive Due Process Clause protects a fundamental liberty interest in the companionship and society of family members. By unlawfully entering the home and physically pulling Plaintiff away from his mother while he was performing CPR attempting to revive her, Defendants knowingly and forcibly ended Plaintiff's final moments of companionship with his mother.

57. This conduct shocks the conscience. Defendants were explicitly warned by the Fire Captain prior to entry that the scene was "super calm". Because Defendants were not reacting to a split-second emergency, and because they took the time to deliberate via a "10-21" telephone call with SGT. MALLOY, their decision to forcibly separate a grieving son from his mother demonstrated a deliberate indifference to Plaintiff's fundamental constitutional rights. This unconstitutional deprivation of familial association was maliciously compounded when Defendants purposefully denied Plaintiff's multiple requests for a final goodbye with his mother before the Coroner transported her remains away.

**NINTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process: Punitive Detention)**

**PLAINTIFF AGAINST DEFENDANTS CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50**

58. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

59. The Fourteenth Amendment's Substantive Due Process Clause strictly prohibits the state from subjecting an individual to punitive conditions of confinement prior to a formal adjudication of guilt.

60. Defendants CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50 violated 42 U.S.C. § 1983 by subjecting Plaintiff to a detention that was inherently punitive rather than investigatory. Defendants caged Plaintiff in the back of a marked patrol vehicle for over an hour and denied his multiple desperate requests to be released to hold his mother one last time. When denying this request, Deputy DUNSHEE explicitly stated he was denying Plaintiff a final goodbye "because of [his] prior actions and behavior," confirming the detention and denial were inflicted strictly as extrajudicial punishment. CAZARES responded to this request by stating that Plaintiff "gave [the deputies] a hard time."

61. To compound this emotional punishment, Defendants maliciously accused Plaintiff of "desecrating a corpse," utilizing psychological cruelty to inflict severe emotional distress. The totality of these circumstances demonstrates that the detention completely shocked the conscience and violated Plaintiff's Substantive Due Process rights.

**TENTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Fourteenth Amendment Due Process: Interference with Remains and Right to Sepulchre)**

**PLAINTIFF AGAINST DEFENDANT COUNTY OF KERN and DOES 51-100**

62. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

63. At all times relevant to this Incident, the Decedent's death occurred outside of a medical facility and without an attending physician. By operation of law, the Sheriff-Coroner assumed a mandatory, non-discretionary duty to determine and certify the medical cause of death.

64. Under the Due Process Clause of the Fourteenth Amendment, the next of kin possess a constitutionally protected Property Interest in the remains of their deceased relatives. This interest includes the right to possess, control, and dispose of the remains. (Newman v. Sathyavaglswaran, 287 F.3d 890 (9th Cir. 2002)). Plaintiff, as next of kin, exercised his statutory Right to Sepulchre (California Health & Safety Code § 7100) by choosing to arrange for disposition and home services without utilizing the services of a commercial funeral director.

65. Defendants maintained a custom or policy of restricting death registration exclusively to the Electronic Death Registration System (EDRS). Because the EDRS is a closed system inaccessible to private citizens, Defendants created a technical barrier—an "Electronic Wall"—that effectively stripped Plaintiff of his rights unless he paid a commercial third party. Defendants failed to inform Plaintiff of, or provide access to, the legally required manual (paper) death certificate filing process. On information and belief, this deprivation resulted from various acts and/or omissions, including, but not limited to, the individual Defendants' rigid adherence to unwritten customs, a deliberate refusal to consult or adhere to established policy manuals, and/or a systemic failure by Defendant COUNTY OF KERN to properly train and supervise its

personnel to ensure constitutional compliance. Because the Decedent's death occurred outside a medical facility and fell strictly under the Coroner's jurisdiction, this manual process was the only avenue available for Plaintiff to exercise his Right to Sepulchre without hiring a commercial intermediary. By withholding the manual filing path under these circumstances, Defendants "forced commercialization" of a fundamental right, conditioning the exercise of Plaintiff's Fourteenth Amendment rights upon the hiring of a private, commercial funeral director.

66. Defendants further violated Plaintiff's Procedural Due Process rights by proceeding with a "County Cremation" without providing a "Notice of Abandonment" or any meaningful opportunity to be heard. This failure occurred despite Defendants being in possession of multiple, redundant points of contact for the family, including Plaintiff's phone and email and the sister's phone and postal address. Defendants, or their agents, falsely claimed to have attempted contact with the Plaintiff prior to the final cremation. However, Plaintiff received no emails, voicemails, missed calls, or other communications from the Coroner's office, nor did his sister, demonstrating a conscious disregard for the Plaintiff's rights and a lack of care or regard for the Decedent.

67. Defendants' actions constituted a severe violation of Plaintiff's Substantive Due Process rights. Defendants' decision to cremate the remains—knowing the Plaintiff had specifically objected and knowing that cremation would permanently and irreversibly destroy the Decedent's DNA—constitutes an egregious abuse of government power that shocks the conscience. This act was not a mere administrative error but a deliberately indifferent destruction of the Plaintiff's property interest in the remains. On information and belief, the deprivation of Plaintiff's rights was an intentional course of conduct driven by administrative convenience. "Higher-up" supervisors within the Coroner's Office authorized the premature transport and eventual cremation of the Decedent's remains to clear facility space and/or to satisfy the demands of contractual cemetery partners.

68. By destroying the biological material the Plaintiff intended to preserve for familial memorialization, future medical lineage records, and as a sacred keepsake, Defendants extinguished a fundamental right to choose the manner of memorialization and disposition. These customs and failures to train represent a conscious choice by the Sheriff-Coroner, acting as the final policymaker for Defendant COUNTY OF KERN, to prioritize administrative convenience over the constitutional rights of the next of kin.

**ELEVENTH CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Municipal Liability / Monell)**

**PLAINTIFF AGAINST DEFENDANT COUNTY OF KERN and DOES 51-100**

69. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth herein.

70. The unconstitutional actions of Defendants CAZARES, DUNSHEE, and SGT. MALLOY were not isolated incidents of rogue misconduct. Rather, they were the direct, proximate, and highly predictable consequence of Defendant COUNTY OF KERN's unconstitutional policies, widespread customs, and systemic deliberate indifference to the constitutional rights of its citizens.

71. **The "DOJ Stipulated Judgment" (Systemic Legal Notice):** Defendant COUNTY OF KERN had actual, documented legal notice of its systemic constitutional failures. The County is currently subject to a court-ordered Stipulated Judgment initiated by the California Department of Justice (People of the State of California v. County of Kern, Kern County Superior Court Case No. BCV-20-102971). This judgment requires sweeping systemic reforms specifically targeting Fourth Amendment searches and seizures, supervisory oversight, and accountability. In November 2025, the State DOJ cited the County for only "partial compliance" and successfully moved to extend the court's jurisdiction for two additional years. This extension proves the

County's training and supervisory apparatus regarding the Fourth Amendment remained broken and non-compliant during the exact timeframe of Plaintiff's January 2023 constitutional deprivations.

72. **The "RFA 17 Admissions" (Concession of Unconstitutional Policy):** Furthermore, the existence of these unconstitutional policies is explicitly conceded by the individual deputies under oath. In their verified responses to Plaintiff's Requests for Admissions (RFA No. 17), both Defendant CAZARES and Defendant DUNSHEE explicitly denied that their warrantless entry and subsequent arrest of Plaintiff were "NOT consistent with KCSO training, policy, or protocols." By swearing under penalty of perjury that their unconstitutional conduct was consistent with official KCSO procedures, the deputies have admitted that Defendant COUNTY OF KERN's official training and policies directly authorized, ratified, and mandated the deprivation of Plaintiff's Fourth Amendment rights.

73. In the alternative, and in conjunction with the admissions above, Defendant COUNTY OF KERN maintained deliberate indifference through the following unconstitutional customs, policies, and practices, functioning as a multi-tiered framework of municipal liability:

74. **Pillar I (Deliberate Indifference in Training):** The County maintains a deliberately indifferent failure to adequately train deputies on the strict constitutional limits of warrantless entries and the misapplication of California Penal Code § 148(a)(1). The County completely failed to provide adequate, scenario-based training on how to apply constitutional limits during non-criminal medical/grief calls, instead grooming deputies to prioritize third-party first-responder discomfort over the sacred protections of the home. This failure caused multiple deputies to concurrently reach the mathematically impossible, erroneous conclusion that a son performing CPR on his mother constitutes criminal "obstruction."

75. **Pillar II (The Custom of "Off-the-Books" Enforcement):** The County maintains a deliberately indifferent custom of permitting, and failing to discipline, the muting and deactivation of Body-Worn Cameras (BWCs) during active enforcement contacts. Defendant DUNSHEE repeatedly deactivated his BWC to consult with SGT. MALLOY, yet failed to document these deactivations or their justification in his Arrest Report. By tolerating this failure to document, the County informally trains and "grooms" its deputies to intentionally create evidentiary gaps, shielding supervisory directives and constitutional violations from judicial review.

76. **Pillar III (Ratification via the "Rubber-Stamp" Review Process):** The County utilizes a post-incident review process that functions as a procedural sham, effectively ratifying unconstitutional conduct through a custom of systemic acquiescence. The Arrest Reports for this incident were formally reviewed and signed off by a supervisor (Sgt. Warmerdam) and an unidentified secondary reviewer (Doe Reviewer 1). Even though these reports were facially deficient—lacking any articulated warrant exception for the home entry and omitting the mandatory BWC deactivation justifications—they were fully approved without any corrective action or discipline. This ratification explicitly functioned as informal training, signaling to the rank-and-file that the County actively tolerates and authorizes Fourth Amendment violations.

77. **Pillar IV (The "Convenience Seizure" Policy):** The County maintains a deliberately indifferent practice of utilizing locked patrol vehicles as holding cages for non-criminal citizens. This unwritten policy allows deputies to unlawfully detain grieving or distressed family members for extended periods strictly for the administrative convenience of clearing a scene, in direct violation of the Fourteenth Amendment.

78. As a direct and proximate result of Defendant COUNTY OF KERN's deliberate indifference and its maintenance of these unconstitutional customs, Plaintiff suffered the constitutional and emotional injuries described herein.

**DAMAGES RESULTING FROM CONSTITUTIONAL VIOLATIONS**

79. Plaintiff sustained injuries and general damages as set forth above. Additionally, Plaintiff has incurred, and/or may continue to incur, special damages in an amount to be proven at trial. As a direct and proximate result of the actions and/or omissions of the individual Defendants, and the unconstitutional acts, omissions, customs, policies, practices, and systemic failures—including, but not limited to, failures to train, supervise, and discipline—by Defendant COUNTY OF KERN, Plaintiff is entitled to recover full compensation for both general and special damages.

80. Furthermore, Plaintiff suffered prolonged and severe emotional distress—including, but not limited to, profound fear, anger, sadness, severe anxiety, loss of sleep, and a loss of the enjoyment of life—as a direct result of Defendants' actions. This severe emotional trauma was inflicted by the entirety of the ordeal, including the unlawful entry, the physical seizure, the forced separation from his dying mother, and the punitive detention, all of which were proximately caused and facilitated by Defendant COUNTY OF KERN's systemic policy and training failures.

81. Moreover, because the individual Defendants unlawfully arrested Plaintiff and issued a meritless criminal citation, Plaintiff was subjected to the constant, looming threat of criminal prosecution. Although the District Attorney formally rejected the charges in the "interest of justice" shortly after the incident, Plaintiff was never notified of this dismissal. Consequently, the individual Defendants' actions and Defendant COUNTY OF KERN's systemic failures forced Plaintiff to live under the reasonable fear of imminent arrest for a full year until the statute of limitations expired, purposefully inflicting sustained emotional trauma and legal uncertainty upon Plaintiff during his period of mourning.

82. Defendants subjected Plaintiff to their wrongful conduct knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated.

Thus, the conduct of the individual Defendants and DOES 1-50 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983.

83. Plaintiff is also entitled to reasonable costs and attorney fees under 42 U.S.C. § 1988 and other applicable codes or laws.

**VI. PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendants, and each of them, as follows:

- For general and compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial;

- For special damages, including but not limited to the loss of property and associated financial costs, in an amount to be proven at trial;

- For punitive damages against the individual Defendants (CAZARES, DUNSHEE, SGT. MALLOY, and DOES 1-50) in their individual capacities, to punish and deter such malicious and reckless conduct in the future;

- For declaratory and injunctive relief against Defendant COUNTY OF KERN as deemed appropriate by the Court;

- For reasonable costs of suit incurred herein;

- For reasonable attorney's fees pursuant to 42 U.S.C. § 1988, should Plaintiff retain counsel;

- For pre-judgment and post-judgment interest as permitted by law; and

- For such other and further relief as the Court deems just and proper.

**VII. JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

DATED: July 2, 2026

MARK ZARKOWSKI
Plaintiff *Pro Se*